**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 20, 2012[*]
Decided August 20, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-2740

| | |
|---|---|
| DAVID C. GEVAS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 08 C 3074 |
| JACQUELINE MITCHELL, TERRY | |
| MCCANN, and WILLIAM SELMER, | Ronald A. Guzmán, |
| *Defendants-Appellees.* | *Judge*. |

**O R D E R**

David Gevas, an Illinois inmate, waited four months for the prison dentist who diagnosed his painful abscessed molar to extract the tooth. Gevas filed suit under 42 U.S.C. § 1983 claiming that the dentist, along with the administrator of the prison's Health Care Unit and several other defendants, were deliberately indifferent to his suffering in violation of the Eighth Amendment. The district court refused to let the case proceed against the dentist or the HCU administrator, though the dentist's supervisor, who eventually was found not liable at trial, pointed to both as responsible parties. We conclude that the court abused its discretion in dismissing the dentist and administrator, and remand for further proceedings against those defendants.

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Gevas was pro se when he sued in May 2008. He amended his complaint twice in October 2008, and at that time the defendants included Wexford Health Sources along with the company's on-site medical director, Dr. Partha Ghosh, and the Wexford dentist—as yet unidentified and named only as "John Doe"—who treated Gevas. Also named as defendants were the prison's warden, a grievance officer, and Dr. Jacqueline Mitchell, the acting head of the HCU and herself a dentist. (Our list excludes several other defendants unconnected to this appeal.)

In his second amended complaint Gevas alleged that on January 30, 2007, he was treated by the dentist for pain in an upper right molar. The dentist took x-rays, diagnosed an infection at the root, and told Gevas that the tooth would have to be extracted. He prescribed an antibiotic and pain killer and told Gevas that the tooth would be pulled after the antibiotic had run its course. But Gevas did not receive follow-up care even after taking the antibiotic and exhausting his supply of pain medication. His condition quickly worsened, an abscess developed, and he experienced difficulty eating and sleeping because of the extreme pain. He also was disciplined when the pain kept him from reporting for a job assignment. From mid-February to mid-March, Gevas asked medical staff for dental care. In March he also wrote to the dental office requesting immediate treatment and filed two grievances requesting a dental appointment. An unknown staff member scheduled Gevas for a March 28 appointment, but he asserts that a guard refused to let him attend. He wrote again to the dental office requesting care, and continued to pursue relief through the grievance process. Gevas finally saw the treating dentist on June 5, 2007, and the dentist removed his molar.

In this complaint, Gevas alleged that the warden and Dr. Mitchell, the HCU administrator, had failed to follow procedures to address his dental needs. Gevas attached the prison's responses to his grievances, which show that on April 12 the warden had declared those grievances to be routine and said they should be processed through normal channels. That same day, and again on April 27, Gevas's counselor sent the grievances—which disclose that on January 30 the dentist had diagnosed an abscessed tooth that must be pulled—to Dr. Ghosh, the Wexford medical director, for review and response. In addition, according to Gevas, the grievances also were received by Dr. Mitchell on April 27 (the grievances are stamped "received" by HCU on that date). A month later the defendant grievance officer received a written reply from Dr. Ghosh (dated April 28) explaining that Gevas "saw" a dentist in January and then was a no-show for his appointment on March 28, 2007. Dr. Ghosh said nothing about the *reason* for the January visit or the dentist's conclusion that the infected molar must be removed. He instead punted the matter back to Dr. Mitchell and wrote that Gevas should contact her for any dental issues. Gevas did not see this response until July, however, because it took that long for the

grievance officer to conclude, and the warden to agree, that all was well in view of what Dr. Ghosh had written. And by then Gevas had received the dental treatment prescribed in January.

The defendants moved to dismiss Gevas's second amended complaint on the ground that it failed to state a claim. The warden and grievance officer argued that their roles were limited to reviewing Gevas's grievances and that they could not have been deliberately indifferent for deferring to the medical staff. Dr. Mitchell conceded that she did have responsibility for providing medical care, but she argued that Gevas had his tooth extracted only 38 days after she became involved and therefore she could not be liable. The district court, without even acknowledging that Dr. Mitchell had described herself as part of the prison's "medical personnel," reasoned that she and the warden and the grievance officer were "supervisory and grievance officials" who investigated Gevas's grievances, referred him to medical providers, and personally played no part in treating his abscessed tooth. The court dismissed those defendants and directed Wexford and Dr. Ghosh to answer Gevas's complaint. Days after that ruling in March 2009, counsel entered an appearance on Gevas's behalf. Discovery was set to close at the end of October 2009.

Five weeks before the close of discovery, Gevas (through counsel) moved to extend the discovery deadline and to file a third amended complaint. Gevas sought to reinstate his claims against the warden and Dr. Mitchell, and for the first time identified "John Doe," the treating dentist, as "Dr. Selmer." According to counsel, the Department of Corrections finally had disclosed medical records with that name but only after being served with a subpoena. Gevas added in a pro se submission that he had been asking for those records, to no avail, since before filing his complaint more than a year earlier. In the proposed amended complaint, Gevas offered few new facts, but he did say explicitly that Dr. Mitchell was not being sued in a supervisory capacity but because, as the head of the HCU, it was her job to assure that needed medical care was scheduled. Gevas alleged that Dr. Mitchell had failed to fulfill her responsibility to schedule him for an emergency appointment with the dentist. Based on her dental training and a Department of Corrections administrative directive, Gevas continued, Dr. Mitchell would have known that an abscessed molar required urgent care.

In early October the district court allowed Gevas to file his third amended complaint but invited the defendants to move for reconsideration. Later that month counsel for the warden and Dr. Mitchell did so, and though Dr. Mitchell previously had acknowledged her position within the prison's medical staff, she now asserted that Gevas's allegations against her, like his allegations against the warden, concerned only the handling of prison grievances. (No one said anything about the naming of Dr. Selmer.) The warden and Dr. Mitchell argued that Gevas had waited too long—a few weeks before the close of

discovery and six months after counsel entered her appearance—to amend his complaint. The defendants would be prejudiced, they said, by having to exchange new rounds of written discovery, depose Gevas again, and depose the warden and Dr. Mitchell. Moreover, defense counsel argued, the revised complaint still failed to allege personal involvement by the warden or Dr. Mitchell, and so amendment would be futile.

For more than three months that motion remained pending, and during the interim the parties proceeded on the assumption that Gevas's third amended complaint was the operative complaint. During that time Dr. Ghosh moved to dismiss the third amended complaint, he and Wexford filed answers, and the district court granted the joint motion of all parties to continue the discovery deadline until the end of December 2009. Dr. Mitchell was deposed, and although the lawyers for the nonparties had agreed on a date to depose Dr. Selmer, Wexford stalled a September 1 interrogatory seeking his full name and address until the district court granted Gevas's motion to compel until early December.

Then in February 2010 the district court granted the motion and struck the third amended complaint. The court reasoned that Gevas had unduly delayed seeking to amend, that the defendants would be prejudiced, and that the proposed amendment was futile. Gevas could not justify his delay, the court asserted, because the latest version included nothing new about the involvement of the warden or Dr. Mitchell. And allowing the reinstated claims to proceed at that late date, the court added, would prejudice the defendants by requiring them to spend more time and money litigating. The court did not mention Dr. Selmer.

Gevas countered with his own motion to reconsider, pointing out that the district court had not given a reason for denying him the opportunity to proceed against Dr. Selmer. Gevas noted that at screening, *see* 28 U.S.C. § 1915A, the court had allowed the claim against Dr. Selmer to proceed even though his name was still unknown, and yet now that the dentist was identified (at least by surname) the court effectively had dismissed the claim with prejudice by not letting Gevas add the name to the existing claim. Counsel recounted that almost 11 months before—just days after entering the case—she had started serving interrogatories and requests for production to discover the identity of "John Doe" but got nowhere until the defendants and the Department of Corrections eventually began complying in the summer and finally, at the end of July, released medical records disclosing the involvement of "Dr. Selmer." Gevas added that discovery had continued, and he now possessed an expert witness' report criticizing the actions of both Dr. Selmer and Dr. Mitchell. But the district court, after taking no action for another four months, finally issued a minute order in late June 2010 denying Gevas's motion on the ground that Gevas had failed to exercise diligence during discovery and that allowing him to "add a new party and

claim would unduly delay the resolution of this case." The court did not explain either conclusion.

Dr. Ghosh and his employer, Wexford, then moved for summary judgment. Dr. Ghosh argued that he could not have been deliberately indifferent to Gevas's abscessed tooth because he knew that Gevas was under the care of the dental staff and that Dr. Ghosh did not schedule dental appointments. He admitted that Illinois Department of Corrections Administrative Directive 04.03.102 classified an "acute penapical abscess" as a condition that requires emergency treatment; the Directive also specifies that any offender experiencing a dental emergency must receive an examination the following business day. Dr. Ghosh stated in his deposition that Dr. Mitchell was handling some of the dental scheduling at that time but that Dr. Selmer likely would have been responsible for scheduling his own follow-up appointments. Dr. Mitchell asserted in her deposition that she had no responsibility for scheduling dental patients while she worked as the HCU administrator. She did respond to grievances, but it was ultimately Dr. Ghosh's responsibility to determine whether treatment was necessary. She too stated that the dental staff or the dentist himself would be responsible for scheduling follow-up for patients. As a dentist, Dr. Mitchell admitted, she would have scheduled a follow-up extraction of an infected molar like Gevas's within a week of his first appointment.

The district court concluded that Gevas's evidence was inadequate for Wexford to be liable under § 1983 but reasoned that whether Dr. Ghosh had been deliberately indifferent was a question for the jury. The court reasoned that Directive 04.03.102 classifies an acute abscess as a dental emergency requiring an examination within one business day, Gevas's abscess had worsened in February, he filed emergency grievances in March seeking previously prescribed treatment, and Ghosh reviewed those grievances and his medical file in April and yet did nothing after learning that Gevas had not had any dental treatment since January. Inexplicably, the district court also noted at the beginning of its written decision that Gevas had never identified or served "John Doe" and thus he would be dismissed as a defendant. At trial Dr. Ghosh, who moved in limine to prevent Gevas from presenting evidence of wrongdoing by Dr. Selmer and Dr. Mitchell or suggesting that he could be responsible for their actions, was found not liable.

On appeal Gevas does not take issue with the outcome of the trial but instead contends that Dr. Selmer, Dr. Mitchell, and the warden should have been tried along with Dr. Ghosh. The district court abused its discretion, Gevas maintains, by not allowing his amended complaint to proceed.

A district court should freely give leave to amend a complaint when justice requires. FED. R. CIV. P. 15(a)(2); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th

Cir. 2012); *Johnson v. Cypress Hill*, 641 F.3d 867, 871–72 (7th Cir. 2011). "[W]hile a court may deny a motion for leave to file an amended complaint, such denials are disfavored." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). A district court may deny leave to file an amended complaint in the case of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or where the amendment would be futile. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009); *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). We review the court's denial of a motion to amend for abuse of discretion. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012); *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011).

We start with Dr. Selmer. The district court asserted that Gevas had failed to diligently engage in discovery to identify the "John Doe" dentist. Dr. Selmer echoes that contention in this court, and even represents to us that "[n]ot once" during those months did Gevas or his lawyer "engage in discovery to learn of Dr. Selmer's identity." Our review of the record shows, however, that the district court was mistaken and that Dr. Selmer's brief in this court is, at a minimum, grossly inaccurate. What the record establishes conclusively is that, before he even filed his lawsuit, Gevas had written three letters to prison administrators asking for copies of his medical records, and each time was met with a form response saying that "Medical Records" had put him on a "list" for production. Those requests, Gevas explained, had yielded *one* page pertaining to the dental care he received, and that document did not mention Dr. Selmer. It was only after counsel became involved that Gevas received the medical records identifying Dr. Selmer as his treating dentist, and even for those records counsel needed a subpoena because her requests for production were ignored. What's more, the medical records from the prison did not give Dr. Selmer's first name, and in September 2009 when counsel served an interrogatory asking for that information from the lawyers representing Wexford—the same lawyers who now say that "not once" did Gevas or his lawyer engage in such discovery—counsel was ignored, even after repeated follow-up requests to Wexford's lawyers. It took an order from the district court compelling production before Wexford reacted. So if there was delay in obtaining Dr. Selmer's name, it was because Wexford—his former employer—and the Department of Corrections stonewalled Gevas, not because Gevas and his lawyer were dilatory.

Moreover, "delay on its own is usually not reason enough for a court to deny a motion to amend." *Johnson*, 641 F.3d at 872; *see Joseph v. Elan Motorsports Tech. Racing Corp.*, 638 F.3d 555, 558–59 (7th Cir. 2011) (explaining that district court should have permitted amendment to replace mistakenly named affiliate with actual corporate defendant); *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792–93 (7th Cir. 2004). Gevas sought to add Dr. Selmer within the two-year statute of limitations, which began to run in October 2007

when the Administrative Review Board finalized Gevas's grievance process. *See* 735 ILCS 5/13-202; *Gomez v. Randle*, 680 F.3d 859, 864 n.1 (7th Cir. 2012); *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). Discovery had not yet closed, and Gevas's lawyer had been in the case for only six months. The other defendants did not explain in the district court, nor does Dr. Selmer elucidate on appeal, how any of them would have been prejudiced by allowing the claim against Dr. Selmer to go forward at that time. Gevas's original complaint put the named defendants—including Dr. Selmer's boss and his corporate employer—on notice that Gevas intended to sue the Wexford dentist who treated him. Everyone *except Gevas* knew who that dentist was, and the suggestion that the named defendants were prejudiced because it took time and effort for Gevas to learn what they always knew is frivolous. During the months that the third amended complaint was the operative complaint (between October 2009 and February 2010), the parties deposed Dr. Ghosh and Dr. Mitchell, who discussed their knowledge of Dr. Selmer's involvement in Gevas's care. And that is because, as is evident from their position at summary judgment, Wexford and Dr. Ghosh were focused on Dr. Selmer's involvement in promoting their own defense. Even after Dr. Selmer had been dismissed, his conduct still played a prominent part as the case continued for another 17 months. Dr. Selmer does not even suggest that *he* would have been prejudiced by allowing the claim against him to go forward, nor do any of the other defendants suggest that their own efforts would have been made more difficult by his presence. So in the end, only Gevas was prejudiced by the district court's ruling, since the statute of limitations already had expired before he learned that his third amended complaint would be stricken. That ruling, we conclude, was an abuse of discretion.

The warden and Dr. Mitchell are more difficult. A district court may deny a motion to amend if the amendment would not cure the original deficiencies, or could not survive a motion to dismiss. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008); *Crestview Vill. Apartments v. U.S. Dep't of Hous. and Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004). That limitation on amendment is dispositive for the warden. Prison directors and wardens are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009); *see George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). Gevas alleges no personal involvement by the warden outside of the grievance process, and for that reason his third amended complaint, just like the previous iterations, fails to state a claim against the warden. That claim was properly dismissed.

Adding Dr. Mitchell back into the case, however, would not have been a futile gesture because the district court never should have dismissed the claim against her in the first place. In his second amended complaint, Gevas alleged that Dr. Mitchell knew about

his dental problems and failed to get him the required medical care. This was enough to state a claim. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 409–10 (7th Cir. 2010). As we said in *Burks*, 555 F.3d at 594, an inmate's allegation "that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted—if it names the persons responsible for the problem." Dr. Mitchell initially acknowledged her role as a member of the medical staff, and in moving to dismiss, her only defense to Gevas's claim was the preposterous assertion that she could not be held responsible under the Eighth Amendment since, even without her help, Gevas somehow got his tooth extracted after just 38 more days of pain. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (delays in referring inmate to dentist, to oral surgeon, and ENT specialist over the course of several months while inmate continued to suffer significant pain and his condition deteriorated was sufficient to state a claim of deliberate indifference); *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010) (one-month delay in referring inmate to dentist created issue of material fact about prison doctor's deliberate indifference); *Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995) (failure to send referral for dental care for three weeks after observing inmate's swollen and infected mouth, coupled with knowledge of inmate's suffering, could support a finding of an Eighth Amendment violation).

In the district court Dr. Mitchell did not argue—as she does in this court—that passing the file on to Dr. Ghosh would have been an appropriate response to learning that an abscessed tooth had not been extracted ten weeks after the diagnosis. Dr. Mitchell is a practicing dentist, and when deposed she conceded that the extraction should have taken place within a week, and she also conceded that Directive 04.03.102 required her to take immediate action. Moreover, we reject Dr. Mitchell's contention in this court that she could not have known that Gevas had a serious medical condition because she "was aware from the response to his grievance that he did not attend" the dental appointment schedule for March 28, 2007. In fact, there is no evidence that Dr. Mitchell *ever* saw that response from Dr. Ghosh, and, in fact, what the record shows is that *no one* saw that response until May 31, more than a month after Dr. Mitchell allegedly learned about Gevas's untreated abscess. And, finally, in his third amended complaint, Gevas adds that Dr. Mitchell had some responsibility for scheduling the follow-up dental appointment, an allegation that later was borne out by Dr. Ghosh's deposition. All of this was more than enough to state a claim, and the dismissal on that basis was an abuse of discretion.

Anticipating this conclusion, Dr. Mitchell argues in the alternative that *we* should supplement the record with the trial transcript since, in her view, the jury's verdict might preclude the claim against her. But Dr. Mitchell—whose lawyers are from the same office that represented other defendants at trial—doesn't say that the trial evidence *did* undermine Gevas's case against her; what she says is that Gevas should be faulted for not signaling that

her lawyers perhaps should obtain and review the trial transcript. According to Dr. Mitchell, since Gevas did not order a transcript and purportedly failed to serve her with a statement of the issues he intended to raise in this appeal, *see* FED. R. APP. P. 10(b)(3)(A), she was unable "to order any portion of the trial transcript . . . necessary to dispute the issues involved." This contention is meritless. In his notice of appeal Gevas could not have been clearer that he intended only to challenge the district court's refusal to allow his third amended complaint to proceed. If that document was not enough to alert Dr. Mitchell that Gevas did not need, and would not obtain, the trial transcript, then surely Gevas's motion asking us to narrow the case caption was enough to put Dr. Mitchell on notice: Gevas wrote that "[n]o appeal has been taken from" the judgment on the jury verdict, and that the defendants who went to trial thus "have no interest in this appeal." Those steps satisfied Rule 10(b)(3)(A), and if the record is inadequate to support an alternative argument by Dr. Mitchell, the fault is hers, not Gevas's. *See United States ex rel. Cal's A/C & Elec. v. The Famous Constr. Corp.*, 220 F.3d 326, 330 (5th Cir. 2000). Dr. Mitchell has not briefed, and thus has waived, any contention that the outcome of the trial makes a remand unnecessary. Likewise, she has waived any contention that the evidence developed during discovery makes unlikely the prospect of Gevas overcoming a motion for summary judgment. Those questions are not before us.

Accordingly, the judgment of the district court dismissing Dr. Selmer and Dr. Mitchell is VACATED, and the case is REMANDED with instructions to reinstate Gevas's third amended complaint as against those two defendants. In all other respects the judgment is AFFIRMED.