In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2897

RICHARD M. SMEGO,

*Plaintiff-Appellant*,

*v.*

JACQUELINE MITCHELL, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 08-3142—**Harold A. Baker**, *Judge.*

SUBMITTED DECEMBER 5, 2012—DECIDED JULY 19, 2013[*]

Before ROVNER, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Under 42 U.S.C. § 1983, plaintiff Richard Smego, a civil detainee at the Rushville Treatment and Detention Center in Illinois, sued a dentist, two doctors, and a dental hygienist for violating his

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See Fed. R. App. P. 34(a)(2)(C).

constitutional rights by acting with deliberate indifference to his serious dental problems. The district court granted summary judgment for the defendants. We conclude that Smego offered sufficient evidence for a jury to find that three of those defendants violated his constitutional rights, so we vacate the judgment in part and remand for further proceedings.

We review the facts in the light most favorable to Smego. See *Foskett v. Great Wolf Resorts, Inc.*, 518 F.3d 518, 522 (7th Cir. 2008). In December 2005, Smego agreed to be civilly committed by the State of Illinois under the Sexually Violent Persons Commitment Act, 725 ILCS 207/1–99. During the intake process, he was seen by defendant Dr. Jacqueline Mitchell, a dentist who contracts with Wexford Health Sources, Inc. Dr. Mitchell examined Smego and found that twelve teeth had cavities. All of those cavities, she said, were repairable, and she promised to begin filling them in early 2006.

Yet she never followed through. Throughout 2006, Smego's cavities worsened and his teeth became painful, but he was not summoned for a follow-up appointment with Dr. Mitchell. During that year he made healthcare requests for other, unrelated medical issues, but he did not submit one about his teeth. He would testify later that he believed healthcare requests were intended only for new problems and were not necessary for problems already known to medical staff.

In February 2007, Smego was on his way to an appointment with Rushville's optometrist when he encountered defendant Kelly Lawshea, a Wexford dental hygienist

who worked with Dr. Mitchell. Believing that Lawshea played a role in scheduling Dr. Mitchell's appointments, Smego asked why he had never been called for the follow-up appointment. According to Smego, Lawshea responded that the suction machine was inoperable and that Dr. Mitchell could not work on his teeth without it. Smego told her that he was in pain and needed to see Dr. Mitchell, but Lawshea warned that being a "pest" would not help him get an appointment.

Smego eventually saw Dr. Mitchell on June 24, 2007, eighteen months after she had told him about his cavities and said she would see him again soon to take care of them. But during that visit and another on July 1, she put off doing any work on his teeth, both times explaining through Lawshea that she did not have the necessary "supplies." Dr. Mitchell finally commenced treatment on July 23, but for only one of Smego's affected teeth. When he arrived for this appointment, Smego had told her that a molar — tooth #2 on the dental numbering system — was very painful. But Dr. Mitchell ignored that tooth and instead installed a temporary filling on a different tooth, #31. She did not work on Smego's remaining teeth, and there is no evidence in the record that she prescribed anything for his dental pain.

Dr. Mitchell next saw Smego a month later, and this time she turned to tooth #2. Instead of filling the cavity, however, she declared the tooth unsalvageable and extracted it after persuading Smego to sign a consent form. On this visit Dr. Mitchell prescribed a painkiller, Motrin, but Smego could not take it because he is allergic. The medica-

tion causes hives and painful swelling in his face. At the time, this allergy was noted on the dental chart Dr. Mitchell used to track Smego's treatment.

After this Dr. Mitchell again failed to follow through. Despite having treated teeth #2 and #31, she did not address the ten others with cavities. Smego continued experiencing significant dental pain, and in November 2007 — almost two years after his dental issues had first been identified — he began complaining to his therapist about the pain. The therapist, who was Smego's designated liaison to the medical staff at Rushville, sent an e-mail to Dr. Mitchell inquiring about Smego's status. Dr. Mitchell responded to this e-mail but still did not see Smego for several more months. The therapist also mentioned Smego's difficulties receiving dental care to Dr. Michael Bednarz, the medical director at Rushville. He also contacted Dr. Mitchell, and although he no longer recalls the specifics of their conversation, he concluded that Smego was receiving satisfactory care.

During this gap in treatment following the extraction of tooth #2 — which would ultimately last nine months — Smego was seen for an unrelated medical issue by Dr. Hughes Lochard, a Wexford physician working at Rushville. Smego said his teeth were in pain (he even pulled back his lips to display a broken tooth) and explained his lack of success in getting Dr. Mitchell to follow through. Dr. Lochard replied that he did not want to get involved in dental issues, so instead he offered to prescribe Motrin (despite Smego's allergy) and "just refused to budge" on prescribing a different medication.

Smego finally saw Dr. Mitchell again in early May 2008, four days after he submitted a healthcare request complaining that the "temporary" filling in tooth #31 — which had remained in place for six months — had fallen out. Dr. Mitchell installed another temporary filling and again prescribed the Motrin that Smego could not take. A few weeks later she scheduled more work on tooth #31 but blamed broken equipment when she postponed the procedure. Then in June 2008 — thirty months after Smego's initial examination — Dr. Mitchell placed permanent fillings in tooth #31 and two adjoining teeth.

Three days after that last visit, Smego filed suit against Dr. Mitchell, hygienist Lawshea, Dr. Bednarz, and Dr. Lochard. (Smego also named three other defendants, but he reached settlements with two of them and has not appealed the dismissal of his suit against the third.) He claimed that Dr. Mitchell deliberately ignored his tooth decay and the pain it caused and coerced him into permitting the extraction of tooth #2. Smego named Lawshea as a defendant because he thought she was responsible for scheduling Dr. Mitchell's patients and for keeping the dental office stocked with supplies. He named Dr. Bednarz and Dr. Lochard, he said, because they knew about his difficulties with Dr. Mitchell but had refused to issue a medical writ that would have allowed him to seek dental care outside of Rushville.

In granting summary judgment, the district court observed that Smego had not submitted any healthcare requests about his teeth during 2006 or 2007. The court concluded that Dr. Mitchell had not known about the

painful condition of Smego's teeth and could not have been deliberately indifferent to his need for treatment. The court also concluded that Smego's evidence would not establish that Dr. Mitchell had deliberately ignored his Motrin allergy. But the district court did not address Smego's testimony that he personally had told not only Dr. Mitchell but also his therapist and Dr. Bednarz about his pain. The court also failed to acknowledge that Dr. Mitchell has never denied knowing about the condition of Smego's teeth and related pain or that his concerns had been conveyed by Dr. Bednarz and the therapist.

As for the other defendants, the district court said nothing about Smego's allegation that Lawshea, the dental hygienist, had warned him not to be a "pest" when he told her that he was in pain and needed to see Dr. Mitchell. Instead the court declared that Lawshea's failure to schedule Smego for dental treatment had been negligent at most. The court also declared that she could not be blamed for supplies shortages because she lacked authority to do anything more than place orders and hope for delivery. As for Dr. Bednarz and Dr. Lochard, the district court concluded that both had deferred to Dr. Mitchell's medical decisions and so neither had been deliberately indifferent. The court added that Smego had failed to introduce evidence that Dr. Bednarz had the ability to secure dental supplies or compel Dr. Mitchell to refer Smego to an outside dentist.

On appeal Smego asks that we reverse the grant of summary judgment for the defendants. Although as a

civil detainee Smego's claim of deliberate indifference is derived from the Due Process Clause of the Fourteenth Amendment, the protection afforded him is functionally indistinguishable from the Eighth Amendment's protection for convicted prisoners. See *King v. Kramer*, 680 F.3d 1013, 1017 (7th Cir. 2012) (pretrial detainee); *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) (civil detainee). To establish a claim of deliberate indifference based on the denial of medical care, the plaintiff must show both an objectively serious medical condition and the defendant's deliberate indifference to that condition. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *King*, 680 F.3d at 1018; *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The defendants do not dispute that Smego's tooth decay and the pain it caused constituted serious medical conditions. See *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

We disagree with the district court's conclusion that a jury could not reasonably find that Dr. Mitchell was more than negligent in failing to spare Smego thirty months of serious dental pain by providing the treatment that she herself had already decided was necessary. A jury could conclude that Dr. Mitchell "fail[ed] to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836; see also *Arnett*, 658 F.3d at 751. Dr. Mitchell knew in 2005 that Smego had cavities in twelve teeth and promised to begin working on them very soon. That promise is itself circumstantial evidence of the need for rapid treatment. Rushville also had a policy requiring annual dental exams. Yet after that

initial examination and promise of prompt treatment, she provided no treatment for well over a year. When faced with purported supply shortages or equipment breakdowns, she repeatedly delayed treatment despite her authority to simply send Smego to an outside dentist. When the supplies came in, she ignored his complaint about the pain in tooth #2 (a tooth she had diagnosed as having a cavity over twenty months earlier), did not prescribe him painkillers, and waited a full month before seeing him again and extracting the tooth. And during this litigation, which has been going on now since 2008, Dr. Mitchell admitted that even *five years* after she had diagnosed Smego's cavities she still had not begun treating at least two of them. Thus, there is ample evidence that Dr. Mitchell knew about Smego's tooth decay and pain from her personal contact with him, as well as from her conversations with his therapist and Dr. Bednarz. Smego's allegations of untreated dental pain echo those that recently led us to reinstate another inmate's civil rights suit against Dr. Mitchell and another dentist. See *Gevas v. Mitchell*, No. 11-2740, 2012 WL 3554085 (7th Cir. Aug. 20, 2012).

Moreover, a jury could conclude that what little treatment Dr. Mitchell did provide Smego for his pain was clearly inappropriate. See *Arnett*, 658 F.3d at 751. After extracting tooth #2, Dr. Mitchell prescribed Motrin, which Smego's dental chart discloses he cannot take. She did the same thing again shortly before Smego sued and even after he filed his complaint. Moreover, the latter incident occurred after Smego had submitted a healthcare request reminding Dr. Mitchell that he is allergic to

Motrin and asking for a different drug. Although one might doubt Smego's account of doctors who repeatedly prescribed medication that he could not take because of an allergy, he actually is not the first person to claim that a Wexford physician repeatedly prescribed ibuprofen (the active ingredient in Motrin) despite a known allergy. See *Olive v. Wexford Corp.*, No. 11-3005, 2012 WL 53228016 (7th Cir. Oct. 31, 2012).

Our criticisms of defendants thus far make this an appropriate point to remind a reader that we are reviewing a grant of summary judgment, so that we must accept Smego's testimony about the course of his treatment or the lack of it. Nevertheless, defendants moved for summary judgment and invited such harsh review of their actions and inactions.

Perhaps some of Dr. Mitchell's alleged conduct, standing alone, could be regarded simply as negligence. But a reasonable jury could look at this pattern and infer deliberate indifference, particularly because Dr. Mitchell offered no medical justification for the long delays in treatment or her refusal to prescribe appropriate pain medication. Dr. Mitchell cannot avoid liability simply by pointing to Smego's hesitancy to file healthcare requests — a jury would be entitled to believe Smego's testimony that healthcare requests were not supposed to be used for medical conditions that already were known to the medical staff. And although Dr. Mitchell avers that "[t]o schedule an appointment, a resident must file a request form," it appears from the record that Smego met several times with Dr. Mitchell without filing one.

We also conclude that remand is appropriate for the claim against Ms. Lawshea. Although we agree with the district court that Smego cannot establish deliberate indifference based upon Ms. Lawshea's failure to schedule his appointments and obtain supplies, her involvement did not end there. Even personnel who are not doctors are not permitted simply to ignore a detainee's plight, *King*, 680 F.3d at 1018; *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 679 (7th Cir. 2012), nor can they deliberately obstruct or delay a patient from receiving necessary treatment, see *McGowan*, 612 F.3d at 640–41 (noting that doctors can be deliberately indifferent when they delay or deny access to a specialist).

Ms. Lawshea was in a position at least to bring Smego's pain and difficulty obtaining treatment to Dr. Mitchell's attention, but she did not. What she did instead was tell Smego not to be a "pest." A jury could conclude that this warning discouraged Smego from taking more aggressive steps to receive treatment from the dental office, a particularly serious obstruction if the jury chooses to believe Dr. Mitchell's statement that a detainee could not obtain an appointment without filing a healthcare request. (A jury could also conclude that Ms. Lawshea's "pest" warning tends to bolster Smego's testimony about why he did not submit any further healthcare requests.)

We also conclude, on the other hand, that Smego failed to offer sufficient evidence against Dr. Bednarz to support a finding that he was deliberately indifferent. Smego argues that a jury could conclude that Dr. Bednarz's

failure to obtain supplies for the dental unit or to issue a medical writ for outside treatment constituted deliberate indifference. But there is no evidence in the record that Dr. Bednarz had control over the dental unit's purported problems with supplies and broken equipment. And as the district court correctly noted, Dr. Bednarz did not ignore Smego's problem. He contacted Dr. Mitchell and obtained assurance — whether truthful or not — that Smego was receiving appropriate treatment. Doctors may rely on the representations of their colleagues absent clear evidence that those representations are known to be false. See *King*, 680 F.3d at 1019–20. There is no evidence in the record that Dr. Bednarz ever examined Smego's teeth, and in any event, he is not a dentist, so his decision to rely on Dr. Mitchell's explanation was, at worst, negligent.

We reach the opposite conclusion regarding Dr. Lochard, who unlike Dr. Bednarz had examined Smego's painful teeth and cannot claim ignorance about the lack of treatment. The district court concluded that Dr. Lochard was entitled to defer all dental decisions to Dr. Mitchell. This belief that Dr. Lochard could meet his constitutional obligation to Smego simply by ignoring his untreated dental concerns is mistaken. Smego had told Dr. Lochard both that he was in pain and that he was unable to get necessary treatment from Dr. Mitchell. But unlike Dr. Bednarz, who investigated the problem by contacting Dr. Mitchell, there is no evidence in the record that Dr. Lochard ever contacted Dr. Mitchell, Dr. Bednarz, or Smego's therapist to see why Smego could not get dental care. That Dr. Lochard is not

himself a dentist is beside the point; even non-medical personnel cannot stand by and ignore a detainee's complaints of serious medical issues. *E.g.*, *Berry*, 604 F.3d at 441. Moreover, Dr. Lochard did not defer entirely to Dr. Mitchell. He prescribed Motrin despite the availability of substitutes and knowledge of Smego's allergy. A physician is deliberately indifferent when he persists in an ineffective treatment — and prescribing painkillers that cause a patient to experience pain certainly meets this standard — for a serious condition. See *Gonzales v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011); *Arnett*, 658 F.3d at 754.

Accordingly, we VACATE the grant of summary judgment in favor of Dr. Mitchell, Ms. Lawshea, and Dr. Lochard and REMAND the case for further proceedings on Smego's claim of deliberate indifference against those defendants. In all other respects we AFFIRM the judgment.