**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 13, 2016[*]
Decided May 16, 2016

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1629

| | |
|---|---|
| RICHARD M. SMEGO, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 08-3142 |
| JACQUELINE MITCHELL, *Defendant-Appellee*. | Sue E. Myerscough, *Judge*. |

### O R D E R

This case is before us for the second time. Richard Smego, a civil detainee at Rushville Treatment and Detention Facility in Illinois, sued the facility's dentist, Dr. Jacqueline Mitchell, claiming that she was deliberately indifferent to his need for dental care, in violation of the Fourteenth Amendment. *See* 42 U.S.C. § 1983. Previously we overturned the grant of summary judgment for Mitchell and remanded for trial. *Smego v. Mitchell*, 723 F.3d 752 (7th Cir. 2013). On remand a jury found in favor of Mitchell, and though Smego argues that defense counsel had prejudiced the jury through improper

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

questioning and argument, he did not seek a mistrial or, in most instances, even object to the perceived errors. Smego thus failed to preserve his appellate claims, and on that basis we affirm the judgment.

The evidence at trial was not flattering to Dr. Mitchell, who works for Wexford Health Sources, a contract healthcare provider for the 550 detainees at Rushville. Dr. Mitchell, who works fifteen hours per week as the lone dentist at Rushville, first saw Smego during the intake process when he entered the facility in December 2005. As evidenced by the notes that Mitchell personally wrote in Smego's medical chart, she had known since that very first encounter that he needed significant dental work. That day Mitchell herself counted a total of twelve cavities in ten of Smego's teeth, and at trial he testified that he specifically told her that a front tooth was turning dark in color, and that an upper molar (#2 on the dental numbering system) was cracked. Both of these teeth, he explained, were sensitive.

At that intake session Dr. Mitchell promised to begin treatment in early 2006. She documented that plan in Smego's medical chart, but afterward she never followed through. It was only because the medical staff had scheduled Smego for a routine, annual checkup and cleaning on June 24, 2007—*eighteen months* after his intake appointment— that Smego saw Mitchell a second time. He told the defendant that a checkup was unnecessary because his teeth hurt and the need for fillings had been established already, but Mitchell told him that she didn't have the necessary "supplies" and thus couldn't do anything for him that day. At trial Mitchell admitted that this statement was a lie, as records obtained by Smego confirm that Mitchell had filled cavities for another detainee that very day. Mitchell cleaned Smego's teeth but did nothing else, telling him that he did not get to "pick and choose" what services would be provided or when.

That visit ended with Dr. Mitchell writing in Smego's medical chart that she would fill his #2 upper molar and a different, lower molar (#31 on the dental chart) at his next visit. Smego was scheduled for another appointment the following month, on July 1, but instead of seeing the dentist, he was met by a hygienist (coincidentally, Dr. Mitchell's daughter), who explained, once again, that the materials needed to fill his teeth were unavailable. Smego protested about the delay, he told the jury, but the hygienist warned that being a "pest" would not help him. Smego was called back on July 23, and this time Dr. Mitchell placed a temporary filling in tooth #31. A month later, on August 25, he was seen again, and this time Mitchell turned her attention to tooth #2. When she started drilling, however, Mitchell discovered that a second cavity had developed since Smego's

intake visit, and thus she instead extracted that molar because it no longer could be salvaged.

After the extraction it was another eight months before Smego next saw Dr. Mitchell. That appointment on May 5, 2008, was prompted by Smego's healthcare request complaining that the temporary filling in the other molar, tooth #31, had fallen out. Before this appointment Smego had started complaining about dental pain to his therapist, who also was his designated liaison to Rushville's medical staff. The therapist alerted Rushville's medical director and also sent an e-mail directly to Dr. Mitchell, who acknowledged the inquiry but did nothing else. According to Smego, when Mitchell did see him on May 4, she first told him that this molar also should be extracted because too much time had passed for it to be saved. Smego disagreed with extracting the tooth, so Mitchell instead put in another temporary filling, this one medicated because the tooth was abscessed. Mitchell then scheduled an appointment to put in a permanent filling. That appointment was postponed, however, because of broken equipment, and the permanent filling was not placed until later in June 2008.

Two months later, shortly after filing this lawsuit, Smego submitted another healthcare request complaining of pain from a tooth that he said was "literally falling apart." He was seen by Dr. Mitchell on September 22, 2008, and that day she placed temporary fillings in three front teeth, all of which had been identified as needing fillings nearly three years earlier. Mitchell told Smego that she would schedule him to return for permanent fillings in the coming weeks, but, once again, Mitchell did not follow through. Rather, much like Smego's visit in June 2007, he finally saw the defendant again when, *two years* later, the medical staff scheduled him for another "annual," routine checkup and cleaning. When Smego asked about the permanent fillings, Mitchell told him that she was about to take medical leave and wouldn't be able to see him again until March 2011. That month the permanent fillings were installed on those three teeth, as well as two others. In addition, Mitchell placed temporary fillings on six other teeth.

All of this trial evidence closely tracked the evidence at summary judgment, which we characterized as "ample" for a jury to find both that Dr. Mitchell knew about Smego's need for dental care and that the treatment she was providing was "clearly inappropriate." *See Smego*, 723 F.3d at 756–57. The latter conclusion was endorsed by Smego's expert witness, Dr. Jay Shulman, who testified that Dr. Mitchell had violated the standard of care by not providing timely treatment. Shulman emphasized that, rather than acquiescing to inadequate resources and doing nothing, Dr. Mitchell was obligated

to seek assistance from outside dentists. In her own testimony Mitchell conceded that she had the authority to engage private dentists but never exercised that authority.

That is a summary of the relevant evidence presented to the jury. But after our remand the district court had recruited counsel for Smego, who then successfully moved in limine to bar Dr. Mitchell from disparaging Smego or referring to his criminal history, and from eliciting testimony that Wexford had purportedly tried without success to hire another dentist to assist Mitchell. Yet as the four-day trial opened, Mitchell's lawyer, Robert Vogt, immediately promised the jurors that they would hear evidence that Wexford had tried without success to recruit more dentists. Vogt returned to this theme several times during the presentation of evidence, at one point asking Dr. Shulman, Smego's expert, whether anyone else would work as a dentist at Rushville. Another time Vogt engaged in a lengthy exchange with Rushville's director of nursing, who agreed with counsel that Wexford had tried for several years to get help for Mitchell, and that if she were to quit, "there would be no dentist there." Then during closing argument Vogt insisted that Mitchell had done "exactly the right thing" by going to Rushville to "provide services to patients like Mr. Smego because in the end nobody else would." Smego had objected to Vogt's question to Dr. Shulman, which the district court sustained on the basis of its pretrial ruling. Smego also finally objected when the director of nursing was asked what would happen if Mitchell quit, but otherwise he did not object to Vogt's opening, closing, or counsel's other questions about efforts to hire another dentist.

In addition, attorney Vogt, who possessed Smego's medical records, asked the plaintiff whether he was taking any psychotropic medications, which Smego denied. Vogt then pressed Smego about the nature of his treatment at Rushville, prompting several relevance objections from Smego that were sustained.

Throughout the trial defense counsel further injected references to the procedures for requesting medical care and filing grievances, starting with telling the jury during his opening statement that Smego had failed to fulfill "his obligation" to complete requests for medical care or submit grievances in order to notify Dr. Mitchell that he required dental care. Counsel elicited agreement from Mitchell and the director of nursing that the "Illinois Administrative Code" imposed on Smego a duty to "submit an attempt to resolve" complaints about Mitchell. And then in closing Vogt insisted that Smego "did not follow the law" and that, had he fulfilled his "responsibility to trigger the system" by submitting a healthcare request or filing a grievance, "Dr. Mitchell would have seen him, she may have taken care of his problem, [and] we wouldn't be here." Smego objected just once to this this line of questioning and argument, when Vogt asked the director of

nursing if the purpose of the procedure for submitting medical requests and grievances was to "avoid ending up right here." The district judge sustained this objection and instructed the jury to disregard Vogt's question.

At no point did Smego move for a mistrial or ask for any curative jury instructions. Nor did he file any post-trial motions after the jury had returned a verdict in favor of Dr. Mitchell.

On appeal Smego makes several related claims, all of which share the theme that attorney Vogt prejudiced the jury through inappropriate questioning and argument. Smego says, for one, that he should receive a new trial because Vogt's references to Wexford's inability to hire more dentists violated the order in limine restricting such testimony. And similarly, Smego contends, Vogt's questions about his mental health prejudiced the jury against him.

The problem for Smego, however, is that he let pass without objection all but a few instances of what he now characterizes as improper questioning or argument. The district court granted Smego all the relief he requested by sustaining his few objections. *See Joan W. v. City of Chicago*, 771 F.2d 1020, 1022 (7th Cir. 1985) ("Although the remarks were clearly improper, the relevant inquiry is not whether they were improper but whether the district court's response, or lack of response, to the remarks was a prejudicial abuse of discretion."). Moreover, comments during opening and closing argument "rarely rise to the level of reversible error." *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008); *see Williams v. Dieball*, 724 F.3d 957, 964 (7th Cir. 2013). That is true even when a party does object, and by not alerting the district court to his concerns, Smego waived any appellate claim that the lawyer's tactics were improper. *See Williams*, 724 F.3d 957, 963–64 (7th Cir. 2013) (explaining that failure to object to opposing counsel's inflammatory statements describing evidence during opening statement waived argument on appeal); *Willis v. Lepine*, 697 F.3d 826, 839 (7th Cir. 2012) (stating that by not objecting to opposing counsel's questioning plaintiff failed to preserve argument).

Smego further criticizes attorney Vogt for invoking Rushville's system for requesting medical care and filing grievances to imply that it was his own fault that he didn't get adequate dental care because he hadn't "followed the law." Smego contends that the evidence regarding the grievance procedure was irrelevant, since he was not required to demonstrate that he had exhausted administrative remedies. The only possible relevance of the grievance process may have been to demonstrate that Dr. Mitchell was made aware of Smego's dental needs, but, Smego argues, his

uncontested evidence demonstrated that Dr. Mitchell had known about his dental needs since their very first meeting in 2005, when she identified the 12 cavities.

Smego has a point. For one, Dr. Mitchell did not offer any evidence that Rushville's system for requesting medical care demands that a detainee continue to ask the medical staff over and over—to pester, as the hygienist put it—for medical care that the staff already knows is needed. All that Rushville's handbook says is that detainees should complete a healthcare request if they wish to see a dentist. Smego and his expert testified that they understood this to mean only that detainees should complete a form to bring to the staff's attention *new* requests for care, and that understanding seems sensible. Moreover, as to the grievance system, both Smego and his expert testified without contradiction that Rushville did not even permit detainees to submit grievances concerning medical care until beginning in August 2008, almost three years after Smego's intake visit with Dr. Mitchell and, indeed, after this lawsuit had been filed. So the contention that Smego had ignored the Illinois Administrative Code and wasn't "following the law" appears to lack an evidentiary basis, and even now Dr. Mitchell does not explain how the grievance procedure could have been relevant if it couldn't be used to complain about the lack of medical care. But here again Smego's problem, as it has been all along, is that he did not object to the introduction of this evidence at trial, so his claim about its lack of relevance and resulting prejudice is waived. *See Christmas v. City of Chicago*, 682 F.3d 632, 640 (7th Cir. 2012); *Griffin v. Foley*, 542 F.3d 209, 218 (7th Cir. 2008).

We do not mean to minimize Smego's concerns. But he did not act on them at trial, and that is where he should have looked for relief first. If he perceived the degree of prejudice that he now asserts, he could have objected more and moved for a mistrial. He did not. We recently expressed doubt that a district judge conducting a civil trial would ever have a duty to declare a mistrial when no party has asked for one. *See Collins v. Lochard*, 792 F.3d 828, 830–31 (7th Cir. 2015). Likewise, Smego did not move for judgment as a matter of law at the close of evidence or after the jury verdict, *see* FED. R. CIV. P. 50, leaving us powerless to review whether the jury's verdict is against the manifest weight of the evidence. *See Collins*, 792 F.3d at 831; *Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 437–38 (7th Cir. 2009). Accordingly, we must reject his claims about the conduct of the trial by Dr. Mitchell's lawyer.

We have reviewed Smego's remaining contentions, but none requires discussion.

AFFIRMED.