**NOT PRECEDENTIAL**

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
_____

No. 20-2846
_____

RUSSELL TINSLEY,
and on behalf of residents at STU in similar situation problems, et,
Appellant

v.

MERRILL MAIN, PH.D, STU Clinical Director; SHERRY YATES, Department of
Corrections; ADMINISTRATOR SHANTAY BRAIM ADAMS, Unit Manager; R. VAN
PELT, Program Coordinator; JACQUELYN OTTINO, Program Coordinator;
LASHONDA BURLEY, PSY.D; CHRISTOPHER BEAUMOUNT, PH.D; YANERIS
CORNIEL, Program Coordinator; J. DMOWSKI, LCADC Clinical Psychologist 1;
LCSW KIMBERLY STOKES; MD DEAN DE CRISCE; JO ASTRID GLADING,
Office of the Public Defender; MARK SINGER, Senior Deputy Attorney General

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-15-cv-07319)
District Judge: Honorable Madeline C. Arleo

_____

Submitted for Possible Dismissal Due to a Jurisdictional Defect,
Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B), or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 24, 2021
Before: AMBRO, SHWARTZ, and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 8, 2021)
_____

OPINION[*]

_____

PER CURIAM

Appellant Russell Tinsley brought a civil rights complaint against several New Jersey officials based on his civil commitment in a state sex offender treatment program. The District Court dismissed most of the claims and granted judgment to the defendants on the remainder. For the reasons that follow, we will summarily affirm.

Tinsley alleged in his operative amended complaint that he was civilly committed[1] to the New Jersey Department of Corrections Special Treatment Unit in May 2010.[2] He stated that he had been progressing through the treatment program until 2014, when he was supposed to move to Phase 2. Certain psychologists allegedly recommended that he repeat portions of the Phase 1 program rather than advance to the next treatment phase. Tinsley filed several grievances against the psychologists and alleged that they and the clinical director retaliated against him for filing the grievances by prolonging his treatment. Later, Tinsley was told not to publish a book that he had written while in treatment because it included the names of the victims of Tinsley's crimes (who were minors), and Tinsley was placed on treatment probation after he nevertheless published.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Tinsley is committed under the New Jersey Sexually Violent Predator Act, N.J. Stat. Ann. § 30:4-27.24 et seq., which provides for the custody, care, and treatment of involuntarily committed persons who are deemed to be sexually violent predators.

[2] Because we write mainly for the benefit of the parties, we recount only those facts that are pertinent to the discussion.

The complaint then listed several general allegations about the conditions in the Special Treatment Unit, including that the unit is understaffed and the residents are often denied phone calls, showers, and treatment. Tinsley's complaint appears to allege four claims against the various defendants: (1) violations of his Fourteenth Amendment right to adequate treatment; (2) violations of his First Amendment rights in connection with the publication of his book; (3) violations of his First and Fourteenth Amendment rights regarding retaliation for filing grievances; and (4) violations of the Eighth and Fourteenth Amendments' proscription on cruel and unusual punishment.

The District Court first granted the defendants' motions to dismiss but allowed Tinsley to file an amended complaint. After Tinsley did so, the Court again dismissed all claims except the First Amendment retaliation claims against defendants Christopher Beaumont, Merrill Main, and R. Van Pelt.[3] After allowing discovery to proceed, the Court, in three opinions, granted the remaining defendants' motions for summary judgment. This timely pro se appeal followed.

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the District Court's rulings.[4] See Tundo v. Cnty. of Passaic, 923 F.3d 283, 286 (3d Cir.

---

[3] The claims against Sherry Yates and Jo Astrid Glading also survived because they did not move to dismiss.

[4] Tinsley's notice of appeal was received by the District Clerk on September 9, 2020, more than 30 days after the District Court's July 31, 2020 summary judgment order. See Fed. R. App. P. 4(a)(1)(A) (requiring an appeal in a civil case to be filed within 30 days of the order appealed from). However, the notice of appeal was dated August 6, 2020, and was thus timely because Tinsley is civilly committed. See Houston v. Lack, 487 U.S. 266, 276 (1988) (discussing the prison-mailbox rule); Jones v. Blanas, 393 F.3d 918, 926-27 (9th Cir. 2004) (applying the prison-mailbox rule to a civil detainee). Additionally,

2019); Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018). To state a claim, a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Summary judgment is then appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may summarily affirm if the appeal fails to present a substantial question. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam); 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

The District Court rightly dismissed Tinsley's Fourteenth Amendment claims based on the allegedly inadequate treatment he was receiving. His allegations amount to a challenge to the defendants' refusal to advance him to the next phase of treatment, thereby preventing him from advancing further toward being released.[5] New Jersey's statutory scheme for the civil commitment and treatment of sex offenders creates a due process liberty interest in that treatment. Leamer v. Fauver, 288 F.3d 532, 545 (3d Cir. 2002). We must ask whether the officials acted with deliberate indifference with respect

though the District Court originally inadvertently failed to dismiss the claims against Jo Astrid Glading, it later corrected that error after Tinsley filed his notice of appeal. See ECF 237. To the extent that Tinsley's notice of appeal was premature, that correction allowed the notice of appeal to ripen. See Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184-85 (3d Cir. 1983) (holding that a premature notice of appeal, filed after disposition of some of the claims before a district court, but before entry of final judgment, will ripen upon the court's disposal of the remaining claims).

[5] To the extent that Tinsley was seeking to be released from confinement, such relief can only be granted through a habeas corpus petition. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Souder v. McGuire, 516 F.2d 820, 823 (3d Cir. 1975) (noting that involuntary commitment is type of "custody" actionable under habeas statute).

to Tinsley's treatment and deprived him of his liberty interest in a way that shocks the conscience. Id. at 546-47. Here, Tinsley had not alleged that he was denied treatment or otherwise identified any specific faults with the treatment he is receiving. We do not discern any behavior from the complaint that is "so egregious, so outrageous" as to state a claim. See id. at 547 (quotation marks omitted).

Tinsley's assertions that he and others in the Special Treatment Unit are subject to "inhumane conditions" likewise fails to state a claim. Because Tinsley is civilly committed and is not confined by way of a criminal conviction, his conditions-of-confinement claim is analyzed under the Due Process Clause rather than the Eighth Amendment. See Youngberg v. Romeo, 457 U.S. 307, 325 (1982); Smego v. Mitchell, 723 F.3d 752, 756 (7th Cir. 2013). Under the Due Process Clause, "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests." See Youngberg, 457 U.S. at 321. Tinsley complained that the institution is sometimes subject to lockdowns that limit his access to phone calls, treatment, and showers. However, he has not quantified or elaborated upon those alleged deprivations, and his general allegations simply cannot overcome the "presumption of correctness" that is afforded to the decisions made by the defendants in this case. See id. at 324 ("Such a presumption is necessary to enable institutions of this type—often, unfortunately, overcrowded and understaffed—to continue to function.").

Finally, Tinsley alleged that the defendants retaliated against him in violation of the First Amendment by refusing to advance his treatment after he filed grievances against them and published a book about his experience in treatment. To state a First

5

Amendment retaliation claim, an individual must assert that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). In this context, "a prima facie showing of causation requires more than the allegation that the professional based a medical decision on symptomology that happened to relate in some way to a patient's protected activity. There must be particular facts alleged that allow the court to reasonably infer it is the protected activity itself, and not simply medically relevant behavior associated with that activity, that formed the basis of the defendant's adverse action." Oliver v. Roquet, 858 F.3d 180, 192 (3d Cir. 2017). If Tinsley makes his prima facie case, the "burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" Id. at 190 (quoting Rauser, 241 F.3d at 334).

We agree with the District Court's careful analysis of these claims. As to Tinsley's claim concerning his book, the evidence shows that the defendants placed him on restricted status because of the effect his book was having on his treatment; there is no evidence that the defendants were targeting Tinsley's constitutionally protected conduct in itself. See id. at 194-95.

6

As to Tinsley's claim concerning his grievances, we agree with the District Court that there is no genuine dispute of material fact and defendant Main[6] is entitled to judgment as a matter of law as to his defense that he would have made the same decision to recommend against advancing Tinsley to the next treatment level regardless of whether Tinsley had filed grievances. A detailed annual report from 2019 notes, among other things, that Tinsley is often "preoccupied with attempts to convince others of his presentation of being a person who has been unfairly persecuted by the legal system," that he minimizes the sexual crimes he committed against adolescents, and that he was recently placed on a restricted status for "poor control of his anger, impulsivity, being verbally abusive and threatening, and severely disrupting the therapeutic milieu." See ECF 222-2 at 13-15. According to the report, the publication of the book was only further evidence of "poor judgment and an inflated sense of self-importance." ECF 222-2 at 14. Given the quantum of evidence that the defendants' decisions were justified by Tinsley's non-protected activity, Main was entitled to summary judgment on this claim.[7] See generally Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

---

[6] Tinsley also raised this claim against defendant Beaumont, but as the District Court explained, there was no evidence that Beaumont was aware of Tinsley's complaints until after he had taken the alleged retaliatory action, and Tinsley therefore cannot show causation.

[7] We agree with the District Court's disposition of Tinsley's remaining claims, for essentially the reasons that the District Court provided. See ECF No. 104. The conflict-of-interest claim against Stokes was not cognizable under § 1983 as it did not allege a violation of the Constitution or federal laws. See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). The retaliation, fraud, and abuse of power allegations against Stokes were conclusory and failed to state a claim. See Iqbal, 556 U.S. at 678. The allegations that Stokes and Dmowski failed to protect Tinsley from a fellow resident's verbal threats

Accordingly, we will summarily affirm the judgment of the District Court.

Tinsley's motion for appointment of counsel is denied.

---

were insufficient because the allegations, assuming they are true, amounted to an "isolated mishap" rather than a "pattern of attacks." See Shaw ex rel. Strain v. Strackhouse, 920 F.2d 1135, 1143 (3rd Cir. 1990) (quotation marks omitted). The District Court was correct that Deputy Attorney General Singer did not violate Tinsley's constitutional rights by failing to respond to a grievance. See generally Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Tinsley's allegations that Corniel required him to repeat some modules and "brushed off evidence" of his completion of other modules was not "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." Leamer, 288 F.3d at 547 (quotation marks omitted).