In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2991

MICHAEL MCGOWAN,

*Plaintiff-Appellant,*

*v.*

DONALD A. HULICK, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09-cv-017-DRH—**David R. Herndon**, *Chief Judge.*

SUBMITTED MAY 26, 2010[*]—DECIDED JULY 20, 2010

Before EASTERBROOK, *Chief Judge,* and POSNER and WOOD, *Circuit Judges.*

---

[*] The defendants were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. The appeal is therefore submitted on the appellant's brief and the record. See FED. R. APP. P. 34(a)(2)(C).

WOOD, *Circuit Judge.* Michael McGowan had an upper molar extracted in January 2007 while he was imprisoned at Illinois's Menard Correctional Center, but the extraction site did not heal and became infected. He was still suffering from complications in November 2007, when a specialist performed the second of two surgeries to close the hole left by the extraction. McGowan then brought this *pro se* lawsuit under 42 U.S.C. § 1983 and Illinois law, claiming that the dentist who performed the extraction, the prison's dental director, the regular prison physician, and the prison warden were all negligent and deliberately indifferent to his plight. At screening the district court dismissed the complaint with prejudice for failure to state a claim, see 28 U.S.C. § 1915A(b)(1), reasoning that McGowan's allegations could not support a finding of deliberate indifference, as opposed to negligence. McGowan moved for reconsideration, but only with respect to Dr. John Gardner, the dentist who extracted his tooth, and Dr. Chapman, the prison's dental director. The district court denied the motion and allowed the dismissal to stand for all four defendants. McGowan's appeal concerns only Drs. Gardner and Chapman.

The complaint, supplemented by medical and dental records, provides the information on which we must rely at this stage; we accept its factual allegations as true and draw all reasonable inferences in McGowan's favor. See *Erickson v. Pardus,* 551 U.S. 89, 90 (2007). McGowan's molar began hurting in early November 2006, when he began filing almost-weekly sick-call requests describing his increasing pain. His pleas went unanswered until

he saw Gardner on January 30, 2007. McGowan asked Gardner to provide a filling for the tooth, but Gardner told him the tooth would have to be extracted because "Menard doesn't do fillings." That statement, says McGowan, was a lie, but he agreed to the extraction rather than endure the pain any longer. The procedure went badly. Although Gardner administered two shots of a local anesthetic, McGowan nonetheless experienced excruciating pain. The tooth fragmented during the extraction, and, McGowan believes, Gardner used non-dental instruments, including an ice pick, to dig the splinters from his gums. McGowan has no other complaints against Gardner. His follow-up care was provided by another prison dentist, who is not a defendant.

In the month following the procedure, McGowan's pain increased. He was given aspirin, but the medication provided no relief. On February 28, 2007, he awoke to find that a mass of tissue the size of a golf ball had broken through the stitches; it was so large that he could not close his mouth. He saw his treating dentist, who excised some of the tissue, gave him Tylenol and salt, and recommended to the prison dental director, Chapman, that McGowan see an oral surgeon. But the Tylenol was also ineffective in reducing his pain, and the visit to the oral surgeon was not forthcoming. Chapman still had not approved that consultation by March 28 when McGowan's prison dentist saw him on an emergency basis for more pain and swelling at the extraction site and diagnosed him with a "sinus perforation with fistula tract." (This is no laughing matter: a sinus perforation is a complication that may occur during the extraction

of an upper molar. See Wikipedia, Dental Extraction, http://en.wikipedia.org/wiki/Dental_extraction (last visited July 15, 2010). A fistula is basically a passageway—in this case, one that connected McGowan's mouth to his sinus cavity. See Medline Plus, Fistula, http://www. nlm.nih.gov/medlineplus/ency/article/002365.htm (last visited July 15, 2010). See also STEDMAN'S MEDICAL DICTIONARY 736 (28th ed. 2006) (noting that a pathologic connection between mouth and maxillary sinus is called an oroantral fistula and is most commonly a complication of removing an upper molar). McGowan alleges that he continued to be in pain as the infection spread up his face and that the mass in his mouth and the foul-tasting discharge kept him from eating, causing him to lose weight.

By April 9, 2007, McGowan had received Chapman's approval to see the contract oral surgeon on the surgeon's next regular visit to Menard. That visit was scheduled for the week of April 23, nearly two months after McGowan's treating dentist had sought approval for intervention by an oral surgeon. But the surgeon cancelled his visit, and McGowan was told he would have to wait another three months until the surgeon came again. Unwilling to postpone treatment for so long, McGowan filed an emergency grievance on April 30. That grievance prompted the treating dentist to request a referral to an oral surgeon at an outside hospital and to prescribe a splint to cover the hole in McGowan's mouth so that he could eat. But when McGowan received the splint two weeks later, the protrusion—now about the size of a large marble—prevented the splint

from fitting properly and without pain, and so he was unable to use it.

Around this time, Chapman approved the outside referral, and McGowan finally saw an oral surgeon on May 25, 2007. But the surgeon announced that he was not qualified to treat McGowan's injury and recommended that McGowan see an ear, nose, and throat ("ENT") specialist. That recommendation did not reach Menard for another two weeks, apparently because the oral surgeon's office had the wrong fax number. This meant that the new request for the ENT specialist was not submitted for approval until June 11. Dental records document that earlier, on June 6, McGowan's treating dentist had personally advised Chapman of the need to expedite the referral, but Chapman waited until June 20 to give his approval. By then, McGowan alleges, nasal mucus was draining out of the extraction site instead of his nose, and the prison doctor had begun treating him for a sinus infection.

Finally, on June 29, 2007, McGowan was evaluated by an ENT specialist, who ordered a CT scan of McGowan's sinuses before proceeding with treatment. The CT scan was approved the next day but did not occur until July 16. On August 3 the ENT specialist performed a sinus endoscopy, which is a procedure to remove blockages from the sinuses. See eHealthMD, What Is Endoscopic Sinus Surgery?, http://www.ehealthmd.com/library/endosinus/ess_whatis.html (last visited July 15, 2010). Unfortunately, McGowan's pain continued, the extraction site did not heal, and the hole from his mouth to his sinus allowed

food to enter his nose when he ate. The ENT specialist performed another surgery on November 2 to remove the tissue mass and close the hole.

At screening the district court concluded that McGowan's allegations did not describe deliberate indifference on the part of either Gardner or Chapman; it therefore dismissed the case. The court did not mention the negligence allegations. It is possible that it implicitly declined to exercise its supplemental jurisdiction, see 28 U.S.C. § 1367(c), but the dismissal apparently addressed the entire complaint and was with prejudice. The court reasoned that McGowan's allegations about the tooth extraction described only negligence by Gardner and not deliberate indifference. The court then concluded that the May 2007 referral to an outside oral surgeon and the June 2007 referral to an ENT specialist negated the possibility that any of the remaining defendants withheld medical care from McGowan. The court acknowledged that McGowan's treatment had been dragged out over a long time, but it thought that "a delay in process does not constitute deliberate indifference."

McGowan maintains that his complaint states a claim against Gardner and Chapman for deliberate indifference. He stresses that Gardner essentially forced him to have the molar extracted by falsely stating that fillings are not available to Menard inmates and then performed a "grossly deficient procedure." Chapman, he continues, purposely delayed his treatment solely for economic reasons, leaving him now with permanent structural damage to his oral and nasal cavity. Our review of a

dismissal under § 1915A for failure to state a claim is *de novo*. *Santiago v. Walls*, 599 F.3d 749, 755-56 (7th Cir. 2010).

The Eighth Amendment prohibits cruel and unusual punishment; that guarantee encompasses a prisoner's right to medical care. It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (quotation marks and citation omitted). This principle applies equally to dental care. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). But negligence, even gross negligence, does not violate the Constitution. *Estelle*, 429 U.S. at 105-06; *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). Only deliberate indifference or worse in the face of a serious medical need will do. *Estelle*, 429 U.S. at 103-04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *Estelle*, 429 U.S. at 104-05; *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007). There is no question that McGowan's complaint sufficiently alleges a serious medical need. The issue here is whether the complaint also plausibly suggests that either Gardner or Chapman or both were deliberately indifferent to that need.

We conclude that the district court was too hasty in dismissing the claim against Chapman, especially given its duty to construe McGowan's *pro se* complaint lib-

erally. See *Erickson,* 551 U.S. at 94; *Haines v. Kerner*, 404 U.S. 519, 520 (1972). McGowan set forth a plausible account of the facts showing how much delay he experienced, how often he and others asked Chapman to act, and what the consequences were of inaction. Delay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment. See *Grieveson v. Anderson*, 538 F.3d 763, 778-80 (7th Cir. 2008) (guards could be liable for delaying treatment for painful broken nose by at least a day-and-a-half); *Edwards*, *supra*, 478 F.3d at 831 (two-day delay in treatment for open dislocated finger for no medical reason stated a claim against prison doctor for deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (dismissal for failure to state a claim proper because six-day wait to see a doctor was not unrea-sonably long for infected cyst deemed not that severe); *Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996) (pre-sented jury question "whether the plaintiffs were in sufficient pain to entitle them to pain medication with-in the first 48 hours after the beating").

McGowan's complaint alleges with specificity a number of troubling delays in his treatment. He was forced to wait three months to see a dentist after he first complained of dental pain. That unexplained delay could support a deliberate-indifference claim if Chapman was aware of the severity of McGowan's dental problems yet refused to approve a dental visit. See *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995). And McGowan has alleged

that Chapman knew as early as February 28, 2007, that McGowan needed to see an oral surgeon after the botched extraction, yet Chapman required McGowan to wait until April, when the contract oral surgeon was scheduled to come to the prison. The symptoms McGowan describes—painful swelling at the extraction site coupled with discharge—could support a finding that two months was too long to wait. Even when it was clear that the extraction had led to a sinus perforation, Chapman stalled in authorizing a referral to an outside surgeon after the contract surgeon had cancelled his planned April visit and was not expected back for another three months. It took a grievance from McGowan to secure the new referral to the oral surgeon, but still Chapman waited two weeks before acting on the prison dentist's request to expedite the referral to an ENT specialist. Finally, the complaint recounts several instances of delayed scheduling with the ENT specialist, including a missed appointment.

We recognize that a more complete examination of the facts may show that McGowan's condition did not need immediate treatment, that Chapman was not aware of the need for more urgent care, or that someone else was responsible for the delay. But those are details to be explored during discovery. At this stage, McGowan has stated a claim for such serious delay in his treatment that the Eighth Amendment may have been violated. His allegations suffice to put Chapman on notice of what he is accused of doing wrong: that is, he allegedly delayed approval for McGowan to see a dentist, an oral surgeon, and an ENT specialist, and these delays both caused

McGowan to suffer unnecessary pain and made his condition deteriorate. This is enough. See *Erickson*, 551 U.S. at 93-94; *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

McGowan's case against Gardner is a different matter. His complaint focuses only on Gardner's decision to extract the tooth rather than to fill it and on the way that Gardner allegedly proceeded. According to McGowan, Gardner lied when he said that "Menard doesn't do fillings," and the purpose of the lie was to obtain permission to perform the extraction. But in the end, this dispute is over nothing but the choice of one routine medical procedure versus another, and that is not enough to state an Eighth Amendment claim. See *Berry, supra*, 604 F.3d at 441; *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Although a medical professional's actions may reflect deliberate indifference if he or she chooses an "easier and less efficacious treatment" without exercising professional judgment, *Estelle*, 429 U.S. at 104 n.10; *Johnson v. Doughty*, 433 F.3d 1001, 1018-19 (7th Cir. 2006), that is not what McGowan accuses Gardner of doing. He also asserts that Gardner botched the extraction, but his allegations describe only negligence, perhaps gross negligence, without suggesting that Gardner maliciously intended to cause McGowan pain or otherwise performed the procedure in a way that he knew would create a substantial risk of complications. See *Farmer v. Brennan*, 511 U.S. 825, 842-45 (1994). The closest McGowan comes to an Eighth Amendment claim is when he says that Gardner used an ice pick to extract the tooth. All McGowan can be saying, however, is that

he saw Gardner use something that looked to him like an ice pick; that much is possible, because some dental instruments may resemble an ice pick to an untrained eye. There is nothing in the complaint supporting the highly unlikely possibility that the set of tools available to the prison dentists at Menard included a common ice pick. We conclude, therefore, that the district court correctly dismissed McGowan's claims against Gardner. See generally *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).

Because we have concluded that it was error to dismiss McGowan's complaint against Chapman, we vacate the order dismissing the action to that extent and remand for further proceedings consistent with this opinion. McGowan is also entitled to have his supplemental state-law claim against Chapman for negligence reinstated. We affirm the dismissal of the federal claim against Gardner. Because we understand the district court to have recognized that McGowan's complaint against Gardner might have stated a state-law claim for negligence, however, we also order that the dismissal of that claim be modified to show that it is without prejudice. See 28 U.S.C. § 1367(c).

VACATED AND REMANDED.