NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 31, 2017[*]
Decided November 1, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-3934

| | |
|---|---|
| JAMES E. HOTCHKISS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 16-cv-0752-MJR |
| | |
| ALFONSO DAVID and BLAKE | Michael J. Reagan, |
| WOODS, | *Chief Judge*. |
| *Defendants-Appellees.* | |

**O R D E R**

James Hotchkiss, an Illinois inmate, sued a prison doctor and a nurse
practitioner, alleging that they were deliberately indifferent to his hip and leg pain and

---

[*] The appellees were not served with process in the district court and have not
participated in this appeal. We have agreed to decide the case without oral argument
because the appellant's brief and the record adequately present the facts and legal
arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P.
34(a)(2)(C).

his low blood pressure. Screening Hotchkiss's complaint under 28 U.S.C. § 1915A(a), the district judge dismissed it with prejudice and assessed a "strike," *id.* § 1915A(g), upon concluding that it was frivolous and failed to state a claim. Because Hotchkiss stated a plausible claim that the doctor prolonged and exacerbated Hotchkiss's leg and hip pain and other symptoms by continuing an ineffective course of treatment, we vacate and remand with respect to the claim against the doctor and otherwise affirm.

We take the following factual allegations from Hotchkiss's complaint as true. *See Perez v. Fenoglio*, 792 F.3d 768, 774 (7th Cir. 2015). Hotchkiss suffers from severe pain in his left leg and hip and has difficulty maintaining his balance. The symptoms, he says, have two causes. First, he was in a motor vehicle accident and had two surgeries on his left leg, leaving him with an artificial knee cap and a steel rod in his leg. Second, his left leg is shorter than his right; whether this is related to the accident and surgeries is not clear. When Hotchkiss was transferred from a county jail to Menard Correctional Center, his customized shoes, which had "a 1/2 inch lift" in the left shoe, were taken away. He was told that he would get new shoes fitted when he arrived at his assigned unit. But Hotchkiss contracted a MRSA infection at Menard and was sent to the acute care unit at Shawnee Correctional Center. After he recovered he was released into the general population at Shawnee with no mention of the shoes.

Hotchkiss immediately began to feel pain in his left leg from wearing the prison's standard-issue boots. Because his legs are uneven in length, he cannot distribute his weight equally. He says he walks with a limp and experiences intense pain, popping, "grinding," and loss of balance that causes him to fall down. The boots exacerbate this problem. He explained his concerns about the boots to prison physician Dr. Alfonso David and other medical staff, but throughout months of treating him, they did nothing but prescribe pain medication. No one performed a physical examination or ordered an X-ray. During this time, Hotchkiss continued to have pain in his knee, femur, and hip, and he fell down regularly. He was issued a permit for a low bunk for six months when he was released into the general population, but when he tried to get the permit renewed and sought permission to walk with a cane in October 2015, David denied the requests. Blake Woods, a nurse practitioner, later renewed his low bunk permit and authorized "slow-walk" and "low-gallery" permits, but Hotchkiss continued experiencing pain and went back to the infirmary regularly.

Hotchkiss submitted medical records with his complaint, which show that on average he went to the infirmary about two to three times per month to discuss his leg issues. He says he often mentioned that his shoes were the cause of the pain. Hotchkiss received various doses of pain medications from ibuprofen to Neurontin. Woods told

him in February 2016 that he would not be getting special shoes. Hotchkiss continued to complain about the pain, and asked medical staff to renew his permits whenever they were due to expire. Finally in April (a year after Hotchkiss entered Shawnee), Woods examined his legs and confirmed that his left leg was "1/2 to 3/4 inch[es]" shorter than the right. Hotchkiss then received permission to use a cane.

Hotchkiss alleges that David was deliberately indifferent to his leg pain because he did not physically examine him or order X-rays for months. In his appellate brief Hotchkiss adds that David gave him a heel insert in August 2016, although Hotchkiss believes it is inadequate when used in the heeled boots. (Hotchkiss also alleged in his complaint that David and Woods were deliberately indifferent to his low blood pressure, but he has abandoned that claim on appeal. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 n.1 (7th Cir. 2016).)

Hotchkiss is proceeding in forma pauperis, so the district judge screened the complaint, *see* 28 U.S.C. § 1915A(a). He concluded that Hotchkiss failed to state a claim of deliberate indifference against David or Woods, *id*. § 1915A(b), and that the claim was frivolous, *see id*. The district judge focused on Hotchkiss's allegation that his leg pain went untreated for six months, although that was only one of many allegations Hotchkiss described related to his leg pain. The judge reviewed the attached medical records (part of the plaintiff's pleadings for all purposes, *see* FED. R. CIV. P. 10), and concluded that Hotchkiss's pain did not go untreated during that time because he received medication and complained only once about pain. The judge also determined that Hotchkiss's complaint that David did not take X-rays or physically examine him did not suggest deliberate indifference because those decisions were soundly within the doctor's professional judgment, and prisoners are not entitled to any specific treatment.

On appeal, Hotchkiss challenges only the dismissal of his claim as it applies to David. His brief, which reads more like a complaint, alleges in more detail the facts supporting his contention that David failed to address the underlying cause of Hotchkiss's symptoms—his leg-length disparity. He argues that David continued an ineffective course of treatment and that the pain medications he received would have been unnecessary had he been properly diagnosed and treated with the simple fix that worked before. Hotchkiss also argues that there was an inexcusable delay in permitting him to use a cane, which has helped him get around the prison without falling.

Our review of a dismissal under § 1915A is de novo. *Perez*, 792 F.3d at 776. To state a claim under the Eighth Amendment, Hotchkiss must show that he suffered from

an objectively serious medical condition to which the defendants were deliberately indifferent. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Perez*, 792 F.3d at 776.

Hotchkiss states a claim under this standard. First, we are satisfied, as was the district judge, that Hotchkiss alleged a serious medical condition—chronic pain. *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681–82 (7th Cir. 2012) (prisoner stated Eighth Amendment claim when he alleged that defendants ignored "severe ongoing pain from a medical condition"). Hotchkiss presents two plausible theories of deliberate indifference. First, Hotchkiss says that despite voicing his concerns about walking in shoes that lacked a lift on the left foot, he received only pain medication and nothing that addressed that underlying problem. A doctor can be deliberately indifferent to an inmate's medical issues if he "chooses an easier and less efficacious treatment without exercising professional judgment." *McGowan*, 612 F.3d at 641 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976)) (internal quotation marks omitted). And in this case, Hotchkiss entered the state prison system with customized shoes to treat his condition, so—taking the complaint's allegations as true—the doctor not only undertreated his condition but effectively discontinued a simple and effective treatment without explanation.

The district judge's reasoning that Hotchkiss complained of pain just once in seven months is hard to square with the complaint and its exhibits; we count at least 14 complaints during that time. The district judge also concluded that receiving medication and slow-walk and low-bunk permits were sufficient as a matter of law, but this conclusion, which is contrary to Hotchkiss's allegations, does not give Hotchkiss the benefit of the doubt he is entitled to at the dismissal stage. *See McGowan v. Hulick*, 612 F.3d 636, 639–40 (7th Cir. 2010) (district court erred in dismissing deliberate indifference claim by reasoning that prisoner's allegations about delay amounted only to negligence, contrary to prisoner's assertions).

True, prisoners have no right to demand specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). But the facts that David never examined Hotchkiss, refused to treat him with orthotic shoes, and refused him a low-bunk permit, strengthen Hotchkiss's contention that the doctor provided treatments that partially masked, but did not address, his underlying ailment. *See Arnett v. Webster*, 658 F.3d 742, 752–54 (7th Cir. 2011). Even the cane, which Hotchkiss waited many months for, helps him stay balanced, but could have been unnecessary if he had received a heel lift or custom shoe to correct his anatomical impairment.

That leads us to Hotchkiss's second plausible theory—that he was subjected to an unnecessary delay in treatment which prolonged his pain and the lack of balance that caused multiple falls. Hotchkiss informs us on appeal that he was given an insert for his left shoe on August 4, 2016, approximately a year and four months after he left the acute care unit and began experiencing problems with his hip and knee. He received a cane twelve months after his first complaint. As we have explained many times, a delay in treating a medical condition may constitute deliberate indifference when it exacerbates an existing condition or causes an inmate unnecessary pain. *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017); *McGowan*, 612 F.3d at 640; *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). One factor that is considered when deciding whether a delay is tolerable is the "ease of providing treatment." *McGowan*, 612 F.3d at 640. If Hotchkiss's knee, hip, and leg pain could be easily fixed with a heel insert or special shoes, a 16-month delay could have violated his constitutional rights. *See Arnett*, 658 F.3d at 753. So too with the cane; although it did not treat the underlying condition, it was an effective stopgap that prevented Hotchkiss from falling down.

That Hotchkiss regularly visited the infirmary to see a nurse, nurse practitioner, or the doctor, and was given medicine to ameliorate his pain, does not preclude him from stating a deliberate-indifference claim. "If all the Eighth Amendment required was that prison officials provide some 'immediate and ongoing attention,' they could shield themselves from liability (and save considerable resources) by shuttling sick or injured inmates to perfunctory medical appointments wherein no meaningful treatment is dispensed." *Perez*, 792 F.3d at 777. Months of treatment with various pain pills did not stop Hotchkiss's complaints that he had pain and trouble walking; therefore, at the pleading stage, we cannot deem the treatment "meaningful" because of the number of times Hotchkiss saw a medical provider. On the contrary, it also would be reasonable to infer from the number of visits that Hotchkiss was *not* receiving adequate treatment.

The district judge's conclusion that Hotchkiss received sufficient treatment was premature at the screening stage when factual allegations must be accepted as true and reasonable inferences drawn in favor of the plaintiff. We also question why the district judge did not give Hotchkiss the customary leave to amend the complaint's perceived deficiencies before dismissing it with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (stating that given "liberal approach to amending pleadings," district judge's denial of leave to amend will be "reviewed rigorously on appeal"); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1023–24 (7th Cir. 2013) (holding that in forma pauperis litigants have same entitlement to amend as fee-paying litigants).

The refusal to allow amendment might have stemmed from the district judge's view that the medical records incorporated into the complaint definitively showed that David adequately cared for Hotchkiss and thus his complaint, in addition to not stating a claim, was "frivolous." As we have said, those records could support a different story, involving a sixteen-month-long quest for a relatively simple treatment while experiencing serious pain and balance issues. Moreover, the district judge's characterization of the claim as frivolous rests on the same analysis as its conclusion that Hotchkiss failed to state a claim. But there is a difference between these standards. No matter how one interprets Hotchkiss's medical records, his claim is not "based on an indisputably meritless legal theory," and his factual allegations are far from "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." *Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

Because we conclude that Hotchkiss states a claim, plausible on its face, that David acted with deliberate indifference, we VACATE the judgment in David's favor and REMAND the case to the district court for further proceedings. Defendant Woods, however, shall not be reinstated as a defendant because on appeal Hotchkiss does not discuss Woods's role in the alleged denial of appropriate medical care, and his complaint did not sufficiently allege that Woods ignored his complaints or otherwise acted in a manner indicative of deliberate indifference. As to Woods, the judgment is AFFIRMED.