# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 29, 2023

Lyle W. Cayce
Clerk

No. 21-40186

Justin Tyler Davis,

*Plaintiff—Appellee*,

*versus*

Lieutenant Kristine Gentry, *also known as* Kristen Zambrano,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:18-CV-110

Before Elrod, Haynes, and Willett, *Circuit Judges*.
Per Curiam:*

Justin Davis, an inmate, sued Lieutenant Kristine Gentry under 42 U.S.C. § 1983 for allegedly violating his Eighth Amendment rights. Gentry now appeals the district court's denial of summary judgment based on qualified immunity. For the following reasons, we REVERSE and REMAND.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-40186

## I. Facts

"Because this case arises from the denial of [Gentry's] motion for summary judgment," the relevant events are described "in the light most favorable to the nonmoving party," Davis. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014); *see also Walsh v. Hodge*, 975 F.3d 475, 481 (5th Cir. 2020) (a summary judgment case noting: "When assessing an interlocutory appeal for qualified immunity," we "must . . . review the complaint and record to determine whether, assuming that all of [the plaintiff's] factual assertions are true, those facts are materially sufficient" to avoid qualified immunity (quotation omitted)). We thus set forth the facts as supported by Davis.[1]

Davis is incarcerated by the Texas Department of Criminal Justice. In August 2016, other inmates severely beat Davis and stabbed him eighteen times. Davis was treated at an outside hospital, and prison medical staff issued him a temporary medical pass granting him permission to use a walking cane. He was also transferred to a new facility for his safety.

A few days after the transfer, two corrections officers came to Davis's cell to escort him to the showers. While Davis was in his cell, the officers attempted to apply "rear-cuff restraints"—in other words, secure Davis's hands behind his back. Because this would prevent Davis from using his

---

[1] Our discussion of the facts omits the events *following* Davis's fall, which are irrelevant to determining the claims that are properly before us. Davis's complaint alleged that Gentry was deliberately indifferent to his health and safety, in violation of his Eighth Amendment rights, when she ordered officers to (1) apply rear-cuff restraints despite knowing that he needed a walking cane; (2) roll Davis onto his stomach after he fell, injuring his arm; and (3) leave his legal mail exposed during a cell search, contributing to his subsequent assault. The district court granted summary judgment as to the last claim. Additionally, Davis abandoned the second claim by failing to adequately brief it on appeal. *See Mackey v. Astrue*, 486 F. App'x, 421, 423 (5th Cir. 2012) (per curiam) (holding that a litigant's failure to press a claim constitutes abandonment on appeal). Accordingly, we need only discuss the events relevant to Davis's first claim.

2

No. 21-40186

cane, Davis asked the officers to use front-cuff restraints instead. They refused, and Davis requested a supervisor. Shortly thereafter, Gentry arrived.[2]

Davis informed Gentry about his injury and cane pass. According to Davis, Gentry responded, "Well, don't worry about it, the shower is just right there. We're going to support you." When Davis continued to protest, Gentry threatened Davis with disciplinary action. In response, Davis finally submitted to the rear-cuff restraints.

As the officers were applying the rear-restraints, Davis's cane fell. Per Davis, when he alerted the officers, they did not pick up the cane. Rather, they responded, "okay, well, we'll support you, here we are," and stood near the opening of the cell door "ready to grab [Davis]." When Davis tried to take a step, he felt a sharp pain in his leg and fell to the ground. Despite Gentry's and the officers' prior reassurances, Davis contends that they "just let [him] fall down" and "didn't grab [him] . . . like they said."

Gentry called prison medical personnel to assist. Several minutes later, nurses arrived and transported Davis to the prison's medical clinic. There, he was prescribed medication and new medical restrictions.

Davis subsequently filed the underlying § 1983 suit, alleging that Gentry violated his Eighth Amendment rights by placing him at a substantial risk of serious harm by disregarding his medical restriction. Gentry moved for summary judgment based on qualified immunity. The district court denied the motion as to this claim, concluding there were several genuine issues of material fact. Gentry timely appealed.

---

[2] Davis testified that he had only resided at the new facility for a few days prior to these events. Accordingly, he "wasn't familiar with [Gentry] and she wasn't familiar with [him]."

3

No. 21-40186

## II. Jurisdiction and Standard of Review

We begin by explaining our limited jurisdiction over this appeal. We may review the denial of a motion for summary judgment based on qualified immunity only "to the extent that the appeal turns on a question of law." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quotation omitted). When, as here, the district court denied summary judgment due to the existence of genuine issues of material fact, we may review the "material[ity]," but not the "genuine[ness]," of those factual disputes. *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020).

In assessing the materiality of factual disputes, we "take [Davis's] version of the facts as true and view those facts through the lens of qualified immunity." *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (summary judgment case). If Gentry "would still be entitled to qualified immunity under this view of the facts, then any disputed fact issues are not material, the district court's denial of summary judgment was improper," and reversal is warranted. *Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009).

## III. Law of Qualified Immunity

Next, we turn to the substantive law dictating whether Gentry is entitled to qualified immunity. To determine whether the defense applies on a given set of facts, we ask: (1) whether "the official's conduct violated a constitutional right," and (2) "whether the right was clearly established." *Cunningham*, 983 F.3d at 190–91 (internal quotation marks and citation omitted). "We can analyze the prongs in either order or resolve the case on a single prong." *Id.* at 191 (internal quotation marks and citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Given the "fact-bound" nature of the constitutional question presented, we take the latter course of action here. *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011) (en banc)

(quoting *Pearson*, 555 U.S. at 819). Accordingly, our inquiry focuses solely on whether Gentry's conduct—based on Davis's version of the facts—violated clearly established law.

## IV. Clearly Established Law

"The 'clearly established' prong is difficult to satisfy." *Cunningham*, 983 F.3d at 191. A constitutional right is only clearly established if it is "sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotation omitted). "The central concept is that of 'fair warning'"—that is, for the law to be clearly established, prior precedent must provide officials with "reasonable warning that the conduct then at issue violated [the plaintiff's] constitutional rights." *Bush v. Strain*, 513 F.3d 492, 501–02 (5th Cir. 2008) (quotation omitted).

Here, the district court determined that Davis satisfied this prong because "it is clearly established by the Supreme Court and in the Fifth Circuit that deliberate indifference to a serious medical condition violates the law." *Davis v. Zambrano*, No. 2:18-CV-110, 2020 WL 8513711, at *6 (S.D. Tex. Sept. 8, 2020) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) and *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). However, this cursory analysis plainly contravenes the Supreme Court's repeated admonition to courts "not to define clearly established law at a high level of generality." *Mullenix*, 577 U.S. at 12 (quotation omitted).

"Of course, general statements of the law are not inherently incapable of giving fair and clear warning" to officials. *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (internal quotation marks and citation omitted). But the general rules articulated in *Gobert* and *Estelle* "do not by themselves create

clearly established law outside an obvious case."[3]  *Id.* at 80 (internal quotation marks and citation omitted).  Rather, to satisfy this prong, plaintiffs typically must point to a case that is sufficiently factually similar so as to have "placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quotation omitted).

Even accepting Davis's version of the facts, *see Walsh*, 975 F.3d at 481, he has not met this burden.  To establish unconstitutional deliberate indifference to an inmate's serious medical needs, Davis needed to demonstrate: (1) "objective exposure to a substantial risk of serious harm," and (2) "that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d at 345–46.

First, it's plainly not *obvious* that Davis's allegations satisfy either prong.  To be sure, Davis alleges that Gentry demanded that he submit to rear-cuff restraints, preventing him from using his prescribed cane.  However, it is also undisputed that both Gentry and the officers told Davis they would support him as he walked to the showers.  Moreover, Davis himself testified that, as he started to walk, the officers stood near the opening of the cell door "ready to grab [him]."  Though ultimately futile,

---

[3] Though the district court only cites *Gobert* and *Estelle* for their general rules, we note that their facts are also too inapposite from this case to satisfy the "clearly established" prong.  First, both cases concluded that the plaintiff *failed* to plead or establish that defendant-officials violated the Constitution. *Gobert*, 463 F.3d at 343; *Estelle*, 429 U.S. at 107.  Additionally, both suits (1) challenged the conduct of medical professionals, not non-medical prison officials like Gentry; (2) did not involve situations—like the one at hand—in which defendant-officials were attempting to balance prison security concerns and the plaintiff's medical restrictions; and (3) involved scenarios where plaintiffs asserted that they *repeatedly* complained to medical professionals about symptoms to no avail. *See Gobert*, 463 F.3d at 343–44; *Estelle*, 429 U.S. at 99–101.  Therefore, these cases could not have provided Gentry with "fair warning" that her conduct was illegal.

these actions would seem to mitigate any risk of substantial harm by Gentry. They also sound in negligence—not recklessness or malice.

Additionally, Davis fails to point to any caselaw clearly establishing that such conduct violated his Eighth Amendment rights. Davis cites five precedents he claims provided Gentry with fair warning that her refusal to honor his cane pass amounted to unconstitutional medical indifference.[4] Yet, none of these cases reflect clearly established law under the facts presented here (with the officers available to help him get there). First, *Monceaux v. White*, 266 F. App'x 362 (5th Cir. 2006) (per curiam) and *Hotchkiss v. David*, 713 F. App'x 501 (7th Cir. 2017) are unpublished, and therefore cannot "clearly establish the law." *See Cooper v. Brown*, 844 F.3d 517, 525 n.8 (5th Cir. 2016). Additionally, both *Hotchkiss* and *Powers v. Snyder*, 484 F.3d 929 (7th Cir. 2007) are Seventh Circuit cases (not addressing the qualified immunity defense). To be sure, the Supreme Court has indicated that in rare instances a "consensus of cases of persuasive authority"—including out-of-circuit precedents—can clearly establish the law. *See Wilson v Layne*, 526 U.S. 603, 617 (1999); *Swanson*, 659 F.3d at 371–72 (same). However, Davis

---

[4] *See Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006) (per curiam) (denying qualified immunity when defendant nurse knowingly failed to treat heart problems); *Lawson v. Dallas County*, 286 F.3d 257, 262–63 (5th Cir. 2002) (affirming damages awarded against Dallas County because its medical personnel knowingly failed to comply with prescribed treatment of severe ulcers); *Monceaux v. White*, 266 F. App'x 362, 365–66 (5th Cir. 2008) (per curiam) (unpublished) (denying qualified immunity when defendant knowingly failed to treat infected thumb); *Powers v. Snyder*, 484 F.3d 929, 931–33 (7th Cir. 2007) (holding that a plaintiff had cognizable Eighth Amendment claim based, in part, on the defendant's denial of plaintiff's use of cane "while forcing him to work at a job that require[d] walking and lifting"); *Hotchkiss v. David*, 713 F. App'x 501, 505 (7th Cir. 2017) (unpublished) (reversing the district court's screening dismissal under 28 U.S.C. § 1915A(a) due to allegations of the defendant's knowing failure to treat complications of leg length discrepancy).

fails to point to any other out-of-circuit precedents demonstrating such a "consensus."

Thus, we are left with *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) (per curiam) and *Lawson v. Dallas County*, 286 F.3d 257 (5th Cir. 2002). Both, however, are inapposite.

In *Easter*, we concluded that a nurse's wholesale failure to address an inmate's severe chest pain violated his constitutional rights. 467 F.3d at 465. Davis contends that while *Easter* involved a different medical infirmity, it nonetheless clearly establishes the general principle that "violat[ing] doctor's orders" by "refusing treatment" is unconstitutional. But the type of illness at issue is not the only—or even most significant—distinction between *Easter* and this case.

First, the plaintiff in *Easter* alleged medical indifference by a *medical professional*. 467 F.3d at 461. To be sure, we have never explicitly stated that prison medical professionals and other non-medical officials are held to different standards, at least in this context. But as discussed, medical indifference claims turn on officials' subjective knowledge of the risk of harm posed by their conduct. *Gobert*, 463 F.3d at 346 (quotation omitted). In the absence of something obvious, and given that a defendant's medical training is plainly relevant to this inquiry, it seems unreasonable to assume the standard is the same.

Second, the nurse in *Easter*, unlike Gentry, did not merely temporarily forego the appropriate treatment for a short period of time. Rather, she refused to provide the plaintiff with *any* medical attention for four hours despite his repeated complaints of severe pain. 467 F.3d at 461.[5]

---

[5] By contrast here, of course, it was agreed that Gentry stated the officers would provide assistance as an alternative to the cane.

Additionally, unlike this case, there was no evidence that the nurse was attempting to "balanc[e] the needs of the prisoner against" other legitimate penological interests, like prison security. *Carlucci*, 884 F.3d at 538 (quotation omitted). Accordingly, *Easter* is inapposite.

*Lawson* also fails to clearly establish the right Davis proposes. There, a paraplegic inmate alleged that nurses failed to adequately treat his severe bedsores—contravening doctor's orders—in violation of his constitutional rights. 286 F.3d at 260–63. On Davis's side, *Lawson*, like this case, involved jail employees' failure to follow medical orders. *Id.* at 262.

However, there are far more differences than similarities between that case and this one. *Lawson*, like *Easter*, involved alleged misconduct by medical professionals, not non-medical officials. Additionally, the suit was against Dallas County, not the individual nurses. Thus, qualified immunity was not at issue in that case. Indeed, the court expressly addressed the fact that part of the reason the nurses did not do what was needed was because they were following the official policy of the County. *Id.* at 263–64. How that "following the policy" issue (relevant to Gentry's concerns about safety) may have impacted the individual nurses' defense if they had been sued was not at issue.[6]

In any event, the facts of Lawson's situation are different in many other ways. For example, Lawson, unlike Davis, was plainly at death's door. We noted that his decubitus ulcers had progressed to the point where he had "holes exposing his left and right trochanter bones" and "was confined to his bed for weeks" with severe pain. 286 F.3d at 261. A hospital physician

---

[6] Importantly, the court stated: "Had these policies [restricting what the nurses could do for Lawson] not been in effect, it is reasonable to expect that Lawson would have received much more personal assistance from the nurses at the jail." *Id.* at 264.

was so alarmed by Lawson's condition that he "determined that the jail could not effectively treat [him] and refused to release Lawson back to the jail." *Id.* Further, Lawson's case involved a much longer period of time than the few minutes at issue here.

The facts of *Lawson* are simply incomparable to those presented here. Accordingly, *Lawson* could not have provided Gentry with fair warning that temporarily disregarding Davis's cane pass, while having the officers agree to care for Davis during his walk, would violate the Constitution. Thus, a reasonable official could have assumed that requiring Davis to submit to rear-cuff restraints to walk to the showers, preventing him from using his cane, did not violate the Constitution.[7]

## V. Conclusion

In sum, regardless of whether Gentry's conduct actually violated Davis's Eighth Amendment rights, those rights were not "clearly established" under controlling authority at the relevant point in time. Therefore, the district court erred in concluding that the general legal principles articulated in *Gobert* and *Estelle* could have provided Gentry with fair warning that her conduct was illegal. For these reasons, we REVERSE the district court's order and REMAND for entry of summary judgment in favor of Gentry.

---

[7] Because Davis fails to demonstrate that Gentry's conduct violated "clearly established" law, we need not address his argument that Gentry was motivated by personal antagonism against him (despite his admission that he did not know her before she arrived at the time of the handcuff-argument).